IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JOHNATHAN DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-0114 |
| | ) | Chief Judge Haynes |
| BEN KILLINGSWORTH and | ) | |
| WARDEN ARVIN CHAPMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M

Plaintiff, Johnathan Dunn, a state inmate at the South Central Correctional Center

("SCCC") in Clifton, Tennessee, filed this *pro se* action under 42 U.S.C. § 1983 against the

Defendants, Ben Killingsworth and Arvil Chapman,[1] Warden of SCCC. The Complaint is before

the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA").

Plaintiff alleges that he was transferred to SCCC in February 2013. Shortly after his

arrival, Plaintiff received threats on his life from other inmates at SCCC, but he does not identify

the inmates who threatened him. In March 2013, Plaintiff requested to be placed in protective

custody. After an investigation, Plaintiff's request was denied. Plaintiff alleges that, as a result,

Plaintiff was "forced" to refuse his cell assignment that resulted in his placement in

administrative segregation. Plaintiff alleges that he was compelled to refuse to protect his own

safety. While in segregation, Plaintiff was told by another inmate that because he was having

---

[1] Plaintiff spells the warden's name in the case caption and in the body of his Complaint
as "Arvin." The Court takes notice that the Warden of South Central Correctional Center is
named Arvil Chapman.

problems with a gang member, Plaintiff could "pay for protection," that would allow him to go

back to the compound. (Docket Entry No. 1, Complaint at 5.) Plaintiff agreed and alleges that his

family members provided $45 to $50 every two weeks to another inmate's "commissary" to pay

for Plaintiff's protection. (Complaint at 5.)

In July 2013, Plaintiff again requested protective custody and notified prison officials that

he was being "extorted," to pay for protection to live on the compound, otherwise, "harm could

come to [his] life." Id. Prison officials again refused protective services and again, "for [his] own

protection," Plaintiff refused his cell assignment.

Plaintiff alleges that refusal of a cell assignment is a disciplinary infraction that can result

in a write-up, time in segregation, loss of good-time credits, loss of certain privileges, and

ultimately a delay in being granted parole. Despite these adverse consequences of refusing a cell

assignment, Plaintiff alleges that prison officials continue to refuse to believe Plaintiff's

assertions of a credible threat of harm to his personal safety.

Attached to his complaint are four separate declarations, including one from another

inmate, Antoine Miller about events after Plaintiff drafted his complaint. According to these

declarations as of September 2013, Plaintiff was housed in "DB-Seg. which is home to currently

30 inmates refusing cell assignment." (Docket Entry No. 4, at 1.) Plaintiff reiterates "numerous"

threats to his safety and specifically states that Unit Manager Killingsworth, a member of the

Protective Custody Board told Plaintiff that he did not see any reason why Plaintiff warranted

protective custody. In denying the request for protective custody, Killingsworth decided that

Plaintiff was manipulative. The Defendant Arvil Chapman, Warden affirmed Killingsworth's

decision. (*Id.*)

In "Declaration #2," Plaintiff states that since being in SCCC, he has met numerous

inmates who have suffered attacks and assaults by other inmates. (Docket Entry No. 5.) On August 31, 2013, the prison was put on lockdown after an inmate was attacked and killed in a gang-related incident. The same inmate had been in protective custody, but was killed after he was returned to the general population.

On September 1, 2013, the prison was again on lockdown after four inmates were stabbed, one of whom was killed. Three other inmates suffered stabbing injuries in early August. In his second Declaration, Plaintiff reiterates the allegations in his Complaint, and affirmatively avers that he is not refusing cell assignment to manipulate the system or cause trouble, but to protect himself, despite the ensuing disciplinary sanctions that entail monetary restitution, loss of good-time, and delay in parole. (Docket Entry No. 5, at 2.)

In "Declaration #3," Plaintiff states that, after the killings on August 31 and September 1, the prison remained on lockdown while a team of specialists "deal[t] with searching and retrieving and recovering things that may become . . . dangerous to the prison officials as well as the inmates." (Docket Entry No. 6, at 1.) However, another inmate was stabbed and required hospitalization during the lockdown. Plaintiff points out that there are not any cameras on any of the units at SCCC, and insists that the continued stabbings result from "chronic understaffing and mismanagement" at the prison and "negligence" on the part of prison officials." (*Id.* at 1–2.)

Plaintiff also submitted the declaration of inmate Antoine Miller, who attests that he arrived at SCCC around February 2013, that he has not felt safe since his arrival. Miller also cited the lack of cameras on any of the "pods," and the multiple stabbings at the prison before the two recent deaths, as well as the lack of adequate staff at the prison to control these problems. Miller states that with the absence of cameras, the perpetrators of these stabbings are rarely caught and that he is in segregation for his refusal to be in the "compound" with the general

-3-

population. (Docket Entry No. 7.)

In "Declaration #4," Plaintiff alleges that a guard was stabbed with a handmade knife on August 27, 2013, just one week after a "group of specialist[s] dealing with gang activity" talked to inmates and searched the compound. (Docket Entry No. 11, at 1.) Plaintiff asserts that, despite this incident and the others stabbings, the Defendant Chapman "still does not plan to provide any help with any kind of protection for both inmates and prison officials alike." (*Id.* at 2.) Plaintiff seeks an "injunction" against Warden Chapman and Unit Manager Killingsworth, as well as compensatory and punitive damages.

Under the PLRA, 28 U.S.C. § 1915(e)(2)(B), the Court must conduct an initial review of a civil complaint filed *in forma pauperis* and dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* at 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), governs dismissals under the PLRA "because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In considering whether a *pro se* prisoner's complaint meets this standard, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted). *Pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

To state a colorable claim under 42 U.S.C. § 1983, a plaintiff must allege (1) a deprivation of rights secured by the Constitution and laws of the United States and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2002) (citations omitted).

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. . . . and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations and internal quotation marks omitted). The Supreme Court has specifically held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citations and internal quotations omitted). To state a claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," and (2) that the defendant prison official has a "sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety. *Id.* at 834 (citations and internal quotations

-5-

omitted). Regarding the first prong, "[i]n the abstract, one prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy this requirement." *Williams v. McLemore*, 247 F. App'x 1, 9 (6th Cir. June 19, 2007). Regarding the second prong, deliberate indifference means "know[ing] of and disregard[ing] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Here, Plaintiff alleges sufficient facts to satisfy the first prong—allegations of a deprivation that is objectively "sufficiently serious." Plaintiff alleges that numerous gang-related stabbings at SCCC over the past year, and a threat by a gang member to his personal safety. For a period, Plaintiff's family paid other inmates for Plaintiff's personal safety. Plaintiff repeatedly requested to be placed in protective custody, but the Defendants denied his requests. Plaintiff's refusal of his cell assignment, subjected him to disciplinary charges to avoid the risks of placement back in the general prison population. Plaintiff also alleged that Defendants subjectively knew of and continue to disregard the excessive risk to Plaintiff's health and safety. In particular, Plaintiff alleges that Unit Manager Killingsworth and Warden Chapman have affirmatively denied his requests for protection, despite the stabbing of prisoners and a guard at SCCC and failed to take any effective steps to provide better protection for all inmates and guards at SCCC, including Plaintiff.

Based on these allegations, the Court concludes that Plaintiff's complaint states an Eighth Amendment claim.

The Court concludes that the allegations in the Complaint are adequate to allege an official-capacity claim based on the existence of a policy or custom of the prison giving rise to Plaintiff's claims.

An appropriate Order is filed herewith.

It is so **ORDERED**.

**ENTERED** this the 22 day of October, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court