# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

JONATHAN DUNN,

    Plaintiff,

v.                                    Case No. 1:13-cv-00114
                                    Judge Haynes / Knowles

BEN KILLINGSWORTH, et al.,

    Defendants.

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon three Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b0(6): the first, filed by Defendant Brandi Fender (Docket No. 209); the second, filed by Defendants Carolyn Jordan and Jason Woodall (Docket No. 214); and the third, filed by Defendant Jordan Kiddy (Docket No. 218). Each Motion is accompanied by a supporting Memorandum of Law. Docket Nos. 210, 215, and 219.

Plaintiff, who is represented by counsel, has filed a Response to each Motion. Docket Nos. 213, 220, 221.

Plaintiff filed his Amended Complaint on October 31, 2014, alleging that Defendants violated his Eighth Amendment rights.[1] Docket No. 141. In his Amended Complaint, Plaintiff generally argues:

---

[1] Plaintiff additionally contends that Defendants Killingsworth and Chapman violated his First Amendment rights. Docket No. 141, p. 17-18. Defendants Killingsworth and Chapman are not parties to the instant Motions. Accordingly, the undersigned will not address Plaintiff's First Amendment violation claims herein.

> 81. By their policies and practices described herein, all Defendants subjected Plaintiff and all similarly situated inmates to a substantial risk of serious harm and injury by refusing to grant Protective Custody unless inmates were wiling to provide information in a quid pro quo transaction. These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of the Plaintiff's deprivation of rights secured by the United States Constitution under the Eighth Amendment.
>
> 82. Plaintiff was extorted by inmates due to Defendants' deliberate indifference to his safety.
>
> 83. Plaintiff was physically, sexually, and mentally abused by Quintin Scharckley due to Defendants' deliberate indifference to Plaintiff's safety.
>
> 84. Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

*Id.*

As pertains to the instant Defendants specifically, Plaintiff avers:

> 5. Defendant Carolyn Jordan was, at all times pertinent to this Complaint, the Tennessee Department of Correction liaison to South Central Correctional Facility. Defendant Jordan is being sued in her in her [*sic*] individual capacity for her role in causing Plaintiff's harms and in her official capacity because at all times relevant to this Complaint, she was responsible for ensuring Tennessee Department of Corrections policies were being upheld at South Central Correctional Facility, and was acting in an administrative capacity with respect to certain matters alleged in this Complaint. At all times relevant to this Complaint, Defendant Jordan acted under color of state law.
>
> . . .
>
> 10. Defendant Brandi Fender is and was at all times pertinent to this Complaint a guard at SCCF, which is located in

2

Clifton, Tennessee, Wayne County, within the Middle District of Tennessee. Defendant Fender is being sued in her individual capacity for her role in causing Plaintiff's harms and in her official capacity because at all times relevant to this Complaint, she had the ability to intervene and prevent [Plaintiff] from suffering from further abuse. At all times relevant to this Complaint, Defendant Fender acted under color of state law.

11. Defendant John Kitty [*sic*] is and was at all times pertinent to this Complaint a guard at SCCF, which is located in Clifton, Tennessee, Wayne County, within the Middle District of Tennessee. Defendant Kitty [*sic*] is being sued in his individual capacity for his role in causing Plaintiff's harms and in his official capacity because at all times relevant to this Complaint, she [*sic*] had the ability to intervene and prevent [Plaintiff] from suffering from further abuse. At all times relevant to this Complaint, Defendant Kitty [*sic*] acted under color of state law.

12. Defendant Jason Woodall was, at all times pertinent to this Complaint, the Tennessee Department of Corrections Deputy Commissioner of Operations. Defendant Woodall is being sued in his individual capacity for his role in causing Plaintiff's harms and in his official capacity because at times relevant to this Complaint, he was responsible for ensuring Tennessee Department of Correction policies were being upheld at South Central Correctional Facility, and was acting in ad administrative capacity with respect to certain matters alleged in this Complaint. At all times relevant to this Complaint, Defendant Woodall acted under color of state law.

. . .

27. On arrival [to SCCF, Plaintiff] explained his interaction with [Inmate] Biles to guard John Kitty [*sic*], further explained that his prior conviction for attempted rape made him a likely target of violence, and requested Protective Custody. Kitty [*sic*] responded that [Plaintiff] should "man up" and "stop being a bitch."

. . .

37. Defendant Woodall reviewed [Plaintiff's] grievance and summarily dismissed it without following through on whether

> SCCF was actually employing TDOC protective custody policies.
>
> . . .
>
> 47. Defendant Woodall again reviewed [Plaintiff's next] grievance and summarily dismissed it without following through on whether SCCF was actually employing TDOC protective custody policies.
>
> . . .
>
> 50. [Plaintiff] made requests to Defendants Hammock, Holly, and Fender at various times to be placed in Protective Custody for his own safety, describing the reasons for his request, to no avail.

*Id.*

Plaintiff seeks declaratory, monetary, injunctive, and "equitable" relief, as well as "any and all economic losses he has suffered as a result of Defendants' actions, including court costs and attorneys fees, lost wages, the value of lost and withheld personal property, money extorted from [his] family members, compensation for [his] physical injuries, and other applicable restitution, as well as for pain and suffering, embarrassment, and humiliation." *Id.,* p. 18-19.

Defendant Fender argues in her Motion to Dismiss that Plaintiff's individual capacity claims against her should be dismissed because he fails to "allege that she had any involvement in the denial of his requests for protective custody, or even that she was aware of sufficient facts from which to be aware that he was being subjected to a substantial risk of harm." Docket No. 210, p. 3. Defendant Fender notes that she could not have had anything to do with Plaintiff's denial of protective custody, because, as Plaintiff indicates, the decision not to place him in protective custody was made by Defendants Killingsworth and Chapman. *Id.*, p. 4. She further notes that Plaintiff acknowledges that his requests for Protective Custody were heard by a

4

"Protective Custody panel," and argues that Plaintiff fails to: (1) allege that she had any involvement in the denial of his requests for Protective Custody; (2) allege that she took any affirmative action(s) to deny him Protective Custody; (3) indicate what factual information she was purportedly given at the time of his alleged request; and (4) allege that she had any knowledge of any facts or circumstances through which she would have known that he was being subjected to a substantial risk of harm at the time of his alleged request for Protective Custody. *Id.*, p. 4-5.

As to Plaintiff's official capacity claims against her, Defendant Fender argues that such claim is "redundant" because CCA, her employer, is already a named party to this lawsuit and "a suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Id.*, p. 5-6.

Defendant Fender also argues that Plaintiff's claims against her are time-barred and do not relate back to the filing date of the original Complaint. *Id.*, p. 6. Defendant Fender contends that, in his Amended Complaint, Plaintiff "attempts to [add her] as a new Defendant in an action in which the statute of limitations has already run," such that his claims against her should be dismissed. *Id.*, p. 6-7.

Plaintiff responds that he states a claim against her in her individual capacity because:

> [Defendant] Fender conflates the procedural hurdles a prisoner
> must surpass in order to bring a §1983 action with the grounds
> available for his § 1983 action. The PLRA requires that inmates
> exhaust their ability to seek redress through the prison's
> administrative processes. Fender's logic suggests that only formal
> uses of the prison's administrative processes create cognizable
> claims of action, which begs the question that if an inmate can only
> be harmed through a lack of redress from the prison administrative
> process, what of the harms underlying the need to access the

5

> prison's administrative processes in the first instance?
>
> . . .
>
> . . . First, the First Amended Complaint establishes that Plaintiff was being threatened with grievous bodily harm, being extorted, and eventually being physically and sexually assaulted by another inmate . . .
>
> Second, the First Amended Complaint makes it clear that Fender was aware of the serious risk of harm that Plaintiff faced . . . "Mr. Dunn made requests to Defendants [Hammack], Holly, and Fender at various times to be placed in Protective Custody for his own safety, describing the reasons for his request, to no avail." Further, Plaintiff established that STG-related violence was rampant in SCCF during the relevant timeframe. . . .
>
> Finally, it is clear on the face of the First Amended Complaint that Fender never took any action to protect Plaintiff from these known substantial risks of harm . . .
>
> . . .
>
> . . . [The PLRA's] procedural requirement does not excuse Fender from her duty as a prison guard to act upon known threats to inmate safety.

Docket No. 213, p. 7-9 (internal citations omitted).

Plaintiff also responds that he has properly sued Defendant Fender in her official capacity because he seeks injunctive relief. *Id.*, p. 10. Plaintiff asserts, "because Plaintiff seeks Fender's enjoinment from engaging in the conduct that lead to his harms, Fender has been properly named in her official capacity." *Id.*

As to Defendant Fender's argument that Plaintiff's claims against her are time-barred, Plaintiff responds that his claims are timely because they should relate back to the filing of his original Complaint. *Id.*, p. 10. Plaintiff explains:

> Plaintiff initially filed his Complaint on September 24, 2013, regarding Constitutional harms caused by Defendants Killingsworth and Chapman refusing to honor his official administrative protective custody requests. Plaintiff had exhausted SCCF's administrative policies for redressing his harms several times over, and all conduct causing the harms Plaintiff had attempted to redress through his official administrative protective custody requests was subsumed within the requests. Plaintiff's initially filed Complaint related back to all deliberatively indifferent conduct he had faced regarding his safety beginning on February 8, 2013, the date of Defendant Kiddy's refusal to honor Plaintiff's first verbal protective custody request based on Bile's threats. . . . Here, the circumstances warrant tolling the statute of limitations so that all Defendants' conduct is included dating back to February 8, 2013, less than one year prior to the date Plaintiff filed this action.

*Id.*, p. 10-11 (internal citations omitted).

Plaintiff also argues that Defendant Fender should have been on notice that her conduct was being challenged, and that she has not been prejudiced by Plaintiff's efforts to determine who was responsible for his harms because CCA, as her employer, will "ultimately absorb any fiscal liability incurred by [her] in this case." *Id.*, p. 11-12. Plaintiff adds that, "[m]ost importantly," the harm suffered by him has been ongoing, such that his claims against Defendant Fender should proceed. *Id.*, p. 12.

Defendants Jordan and Woodall argue in their Motion to Dismiss that Plaintiff's claims against them in their individual capacities should be dismissed because Plaintiff has sued them based on their administrative and supervisory roles, but there is no respondeat superior liability under § 1983, and Plaintiff has not alleged their direct involvement or personal complicity in the alleged constitutional violation. Docket No. 215. Defendants Jordan and Woodall further contend that liability under § 1983 must be based on active unconstitutional behavior and cannot

7

be based upon a "mere failure to act." *Id.*

Defendants Jordan and Woodall note that they are State of Tennessee employees who work for the TDOC: Defendant Jordan is the TDOC liaison to SCCF and Defendant Woodall is the TDOC Deputy Commissioner of Operations. *Id.* Defendant Woodall asserts that Plaintiff's only allegations against him are that he, as a supervisor, reviewed Plaintiff's grievances; he contends that the law is well-settled that denial of grievances cannot give rise to liability under §1983 based solely on the theory that a failure to act constituted an acquiescence in the unconstitutional conduct. *Id.* Defendant Jordan argues that Plaintiff levies no allegations whatsoever against her, other than noting that she is employed by TDOC as a liaison to SCCF. Defendants Jordan and Woodall, contend therefore, that Plaintiff cannot sustain his individual capacity claims against them and those claims should be dismissed. *Id.*

As to Plaintiff's official capacity claims against them, Defendants Jordan and Woodall argue that Plaintiff cannot sustain those claims against them because State officials acting in their official capacities are not "persons" subject to suit for money damages under § 1983. *Id.* Defendants Jordan and Woodall note that a suit against them in their official capacities acts as a suit against the State of Tennessee, which has not waived its Eleventh Amendment immunity with regard to civil rights suits. *Id.*, p. 4-5. Accordingly, Defendants Jordan and Woodall argue that Plaintiff's official capacity claims against them should likewise be dismissed. *Id.*

Plaintiff responds that he sues Defendants Jordan and Woodall "for their own involvement, not under respondeat superior." Docket No. 220, p. 7-8. Specifically, Plaintiff states:

> Plaintiff has alleged that Jordan and Woodall were charged with

> ensuring SCCF operations complied with TDOC procedures, and that Woodall officially reviewed and signed off on the administrative records refusing to grant Plaintiff protective custody. Plaintiff has further set out facts that demonstrate SCCF was not complying with TDOC policies that exist to ensure inmate safety, as STG [gang] violence was extremely prevalent during Plaintiff's incarceration at SCCF and SCCF officials were summarily denying protective custody requests related to STG violence. SCCF is a private prison operated by the corporation CCA. CCA is granted Tennessee government contracts under the caveat that a TDOC liaison be in place to approve CCA officials' actions on behalf of TDOC. Thus, Defendant Jordan and Woodall's involvement in Plaintiff's harms are not based on a passive *respondeat superior* theory - the CCA Defendants' entire authority to operate prisons in the State of Tennessee hinges on the active involvement of TDOC officials such as Jordan and Woodall in ensuring TDOC policies are maintained, a charge Defendants Jordan and Woodall were clearly neglectful in executing based on the overall conditions in SCCF. Woodall is "not merely a supervisor, but is the official directly responsible . . . for adopting reasonable . . . procedures." Jordan and Woodall were derelict in the "specific duties of [their] position[s]," and thus are liable to Plaintiff for his harms . . .

*Id.*, p. 8 (internal citations omitted).

Defendant Kiddy argues in his Motion to Dismiss that Plaintiff's individual capacity claims against him should be dismissed because Plaintiff does not allege that Defendant Kiddy had any involvement in the denial of his requests for Protective Custody, or even that he was aware of sufficient facts from which to be aware that the Plaintiff was being subjected to a substantial risk of harm. Docket No. 219, p. 3-4. Defendant Kiddy notes that, in fact, Plaintiff indicates that the decision not to place him in Protective Custody was made by Defendants Killingsworth and Chapman. *Id.*, p. 4. Defendant Kiddy contends:

> . . . Plaintiff's claims center around his denial of protective custody. In fact within his Complaint, the Plaintiff explicitly identifies the basis of his purported Eighth Amendment cause of

> action, "All Defendants subjected Plaintiff . . . to a substantial risk of serious harm and injury **by refusing to grant Protective Custody** . . ." Thus the act of refusing protective custody is the sole purported act or omission that the Plaintiff has indicated constituted deliberate indifference. Plaintiff directly attributes this act to Defendants Killingsworth and Champman, not Kiddy (or any other named defendants for that matter). Plaintiff acknowledges that his requests for protective custody were heard by a "Protective Custody panel." He then states that he did not receive protective custody, a consequence of decisions that he directly attributes to Killingworth and Chapman because the Plaintiff did not provide information.
>
> Contrastingly, Plaintiff's sole allegation against Kiddy is that after allegedly informing him of his interactions with another inmate, purported prior convictions, and requesting protective custody, Kiddy told him to "man up" and "stop being a bitch." This is simply insufficient to state a constitutional claim. . . . Other than alleging Kiddy spoke to him in a derogatory manner, [Plaintiff] does not allege any act or omission, let alone one of deliberate indifference on the part of Kiddy. Therefore, Kiddy should be dismissed from this action.

*Id.,* p. 4-5 (emphasis original; internal citations omitted).

Defendant Kiddy argues that Plaintiff's official capacity claims against him should likewise be dismissed because a suit against him in his official capacity is akin to a suit against CCA, the entity which employs him, and CCA is already a named party in this action. *Id.*, p. 6.

Defendant Kiddy additionally argues that Plaintiff's claims are time-barred and do not relate back to the original Complaint. *Id.,* p. 6-7. Specifically, Defendant Kiddy maintains that Plaintiff's "Amended Complaint does not correct misnomers or misdescriptions of a party," but rather, simply attempts to add him "as a new Defendant in an action in which the statute of limitations has already run," such that Plaintiff's claims against him should be dismissed as time-barred. *Id.*

10

Plaintiff responds that he states a claim against Defendant Kiddy in his individual capacity because he "has alleged that Kiddy was deliberately indifferent to the threats, extortion, and physical, sexual, and mental abuse Plaintiff suffered after he had been put on notice as soon as Plaintiff arrived at SCCF." Docket No. 221, p. 7. Plaintiff argues that Defendant Kiddy is liable in his individual capacity for the same reasons he contends that Defendant Fender is liable in her individual capacity. *Id.*, p. 7-10; *see also*, *supra*, p. 5-7.

Plaintiff additionally maintains:

> . . . [Defendant] Kiddy also argues that Plaintiff only alleges "Kiddy spoke to him in a derogatory manner" by calling him a "bitch," rather than alleging any act or omission, and notes that because Plaintiff had only just arrived at SCCF, Kiddy did not have adequate time to appropriately analyze the threats against Plaintiff. First, Kiddy's timeline logic ignores both the length of time Plaintiff remained in jeopardy due to Kiddy's acts and omissions and the specificity of Plaintiff's statements to Kiddy regarding his need for protective custody. Further Kiddy's logic that only complaints lodged via the prison's administrative process represent requests for protective custody, thus rendering Plaintiff's only allegation against Kiddy being that he had used offensive language, ignores the day-to-day responsibilities of all prison officials, who are tasked with maintaining inmate safety. "Protective custody" is not only an administrative remedy, but a solution to potential and actual inmate harms perceived by prison officials.

*Id.*, p. 8 (internal citations omitted).

Plaintiff also argues that he has stated a valid claim against Defendant Kiddy in his official capacity because he "seeks for Kiddy and all future prison officials serving his role to be enjoined form engaging in the conduct that lead to his harms." *Id.*, p. 11. As to Defendant Kiddy's contention that Plaintiff's claims against him are time-barred, Plaintiff contends that the claims should stand for the reasons argued with Defendant Fender, above. *Id.*, p. 11-14; *see also,*

*supra*, p. 6-7.

For the reasons set forth below, the undersigned recommends that the instant Motions to Dismiss (Docket Nos. 209, 214, and 218) be GRANTED, and that Plaintiff's claims against Defendants Fender, Jordan, Woodall, and Kiddy be DISMISSED. The remaining Defendants are not parties to the instant Motions, Plaintiff's claims against them, therefore, should proceed.

## II. Analysis

### A. Fed. R. Civ. P. 12b(6) - Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First,

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. 42 U.S.C. § 1983

As noted above, with regard to the instant Defendants, Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 38. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## C. The Case at Bar

### 1. Defendants Jordan and Woodall - TDOC Defendants

#### a. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*. Because Defendants Jordan and Woodall are employees of TDOC, they stand in the shoes of their employer, the State of Tennessee. The State of Tennessee has not waived its immunity under the Eleventh Amendment with respect to civil rights suits. *ACLU v. Tennessee*, 496 F.Supp. 218 (M.D. Tenn. 1980). Additionally, the State of Tennessee is not a "person" amenable to suit under § 1983. *See ACLU*, 496 F.Supp. 218; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Defendants Jordan and Woodall are not "persons" subject to suit in

their official capacities, and Plaintiffs' official capacity claims against them should be dismissed.

**b. Individual Capacity Claims**

42 U.S.C. § 1983 does not provide for the imposition of liability based upon a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). In order to establish individual liability under § 1983, therefore, Plaintiff must demonstrate that Defendants either directly participated in the activity that allegedly violated his Constitutional rights, or personally authorized, approved, or acquiesced in such activity. *See, e.g., Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1983); *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1980). Plaintiff must allege "a causal connection between the misconduct complained of and the official sued" (*Dunn*, 697 F.2d at 128), and must present affirmative evidence that Defendants violated his rights; conclusory allegations are not enough (*see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

As can be seen in the factual allegations recounted above, other than mentioning Defendant Jordan when naming the Defendants, Plaintiff has not levied any allegations against Defendant Jordan specifically. With regard to Defendant Woodall, Plaintiff contends that Defendant Woodall "reviewed [Plaintiff's] grievance[s] and summarily dismissed [them] without following through on whether SCCF was actually employing TDOC protective custody policies." The law is well-settled that the denial of grievances alone cannot impose liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 296 (6th Cir. 1999).

15

Plaintiff's Amended Complaint fails to sufficiently allege that Defendants Jordan and Woodall have been either personally involved in, or personally authorized, approved, or acquiesced in the allegedly violative conduct of which Plaintiff complains. As noted, Defendants Jordan and Woodall cannot be held liable simply due to their administrative and supervisory positions. Although Plaintiff argues that he sues Defendants Jordan and Woodall because "the CCA Defendants' entire authority to operate prisons in the State of Tennessee hinges on the active involvement of TDOC officials such as Jordan and Woodall in ensuring TDOC policies are maintained, a charge Defendants Jordan and Woodall were clearly neglectful in executing based on the overall conditions in SCCF," Plaintiff's allegations are conclusory and insufficient to impose § 1983 liability. Accordingly, the individual capacity claims against Defendants Jordan and Woodall should be dismissed.

**2. Defendants Fender and Kiddy - CCA Defendants**

**a. Official Capacity Claims**

As discussed above, in complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook*, 199 F.3d at 355 n.4 (*citing Graham*, 473 U.S. at 165). *See also, Frost*, 851 F.2d at 827. As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*. As employees of CCA, Defendants Fender and Kiddy stand in the shoes of CCA, and Plaintiff's official capacity claims against Defendants Fender and Kiddy should be dismissed.[2]

---

[2] CCA is a named Defendant in this action, but is not a party to the instant Motions to Dismiss. Accordingly, the undersigned will not herein analyze Plaintiff's claims against CCA.

16

### b. Individual Capacity Claims

As can be seen in the factual allegations recounted above, other than identifying Defendants Fender and Kiddy as Defendants in this action, Plaintiff's allegations against them specifically are that: (1) he "made requests" to Defendant Fender "at various times to be placed in Protective Custody for his own safety, describing the reasons for his request, to no avail"; and (2) "On arrival [to SCCF, he] explained his interaction with [Inmate] Biles to guard John Kitty [*sic*], further explained that his prior conviction for attempted rape made him a likely target of violence, and requested Protective Custody," but "Kitty [*sic*] responded that [Plaintiff] should 'man up' and 'stop being a bitch.'"

The conduct of which Plaintiff complains is that he was not placed in Protective Custody. The harms Plaintiff avers he suffered derive from that. Although Plaintiff avers that he notified both Defendants Fender and Kiddy of his need to be placed in Protective Custody and seeks to hold them individually liable for the fact that he was not so placed, Plaintiff acknowledges that: (1) his requests were heard by a "Protective Custody panel"; and (2) it was Defendants Killingsworth and Chapman who allegedly denied his requests for Protective Custody. Plaintiff fails to allege that either Defendants Fender or Kiddy took any affirmative action toward, or had any involvement in, the denial of his requests for Protective Custody. Because Plaintiff has failed to allege that Defendants Fender or Kiddy personally authorized, approved, or acquiesced in the allegedly unconstitutional conduct, his individual capacity claims against them should be dismissed.

### III. Conclusion

For the reasons discussed above, the undersigned recommends that the instant Motions to

Dismiss (Docket Nos. 209, 214, and 218) be GRANTED, and that Plaintiff's claims against Defendants Fender, Jordan, Woodall, and Kiddy be DISMISSED. The remaining Defendants are not parties to the instant Motions, Plaintiff's claims against them, therefore, should proceed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge